# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

**DAVID CZAPIEWSKI et al.,**
        **Plaintiffs,**

     **v.**                        **Case No. 16-CV-426**

**KURT THOMAS et al.,**
        **Defendants.**

_____

## DECISION AND ORDER

David Czapiewski, Anthony Riach, Larry Andrews, David Thomas, Michael Connely, Jacob Dietrich, Dontrell Anderson, and William Ziemer are Wisconsin state prisoners proceeding *pro se* under 42 U.S.C. § 1983 on claims that Maria Larson, Lynn Propson, Kevin Knudson, Joseph Weister, Kurt Thomas, and Jessica Rhines violated their Eighth Amendment rights when they allowed plaintiffs to share a shaving razor with an inmate who had been diagnosed with Hepatitis C. Before me now are the parties' cross-motions for summary judgment.[1]

### I. BACKGROUND

At all relevant times, plaintiffs were inmates in the custody of the Wisconsin Department of Health Services (WDHS) at the Wisconsin Resource Center (WRC). Defendants were employed by WDHS at WRC: Rhines was a part-time nurse specialist who functioned as the Infection Prevention Specialist; Thomas was a nurse clinician; and Larson, Propson, Knudson, and Weister were psychiatric care technicians (PCTs).

_____

[1] Plaintiffs also move to supplement their summary judgment motion with missing exhibits. Docket No. 102. I will grant this motion.

At the time, a WRC resident was permitted to have his own personal razor if he purchased one or had one in his property. If a resident did not have his own razor, but did have Hepatitis B, Hepatitis C, or HIV, then WRC would provide a medically issued personal razor. Otherwise, a resident who did not have his own razor could check out a shared electric razor on the housing units. A resident using a shared razor was only allowed to shave his face. After each use, the resident was required to clean the razor by removing all hair with a small brush and spraying the razor with disinfectant spray in view of staff, as stated in the WRC inmate handbook.

On March 26, 2015, Jerry DuBose was transferred to WRC. At intake, Thomas reviewed DuBose's medical chart and learned that he had Hepatitis C. He completed a medical restriction/special needs form (referred to as an F-20159 form) indicating that DuBose required a personal razor. Thomas did not indicate the medical reason for DuBose's razor restriction on this form because, due to health information privacy laws, residents' specific medical diagnoses are not shared with unit staff, including PCTs. It was near the end of Thomas's shift, so he placed two copies of the form on the medication cart for the second-shift nurse to deliver to Unit 17, where DuBose was housed. One copy was for the unit PCT (for the unit's records); the other was for DuBose. Thomas does not know what happened after he put the copies on the cart. DuBose says that he received his copy but that he lost it.

Between March 26, 2015, and June 11, 2015, DuBose used Unit 17's shared razor whenever he needed to shave. He attests that, on the first few such occasions, he told the PCT on duty—he specifically identifies Propson and Weister—that he was supposed to be using a personal razor because of his Hepatitis C. Each time, according

to DuBose, the PCT told him that there was no documented razor restriction on file for him, even though he never saw them check. All four defendant PCTs attest that they were not aware that DuBose had Hepatitis C prior to June 11, 2015.

On June 11, 2015, DuBose approached Weister with an open wound on his hand and asked for a band-aid. He told Weister that he had a contagious disease and did not want to infect other inmates. Weister then asked DuBose why he had been using the unit's shared razor and told him to stop doing so immediately.

On June 16, 2015, Rhines returned to work from vacation and learned via email that DuBose had Hepatitis C. She also learned that DuBose had been given a personal razor on June 12, 2015. On June 18, 2015, Rhines advised the Unit 17 PCT to replace the unit's shared razor. She also reviewed the "Sharps Checkout logs," which contain a record of razors issued, used, and returned by residents, to identify those who had used Unit 17's shared razor between April 1, 2015, when DuBose used it for the first time, and June 18, 2015, when it was replaced.

On June 19, 2015, Rhines met individually with each of the residents she had identified, as well as other residents who requested to be screened for Hepatitis C— Czapiewski attests that use of "sharps" was not always properly recorded. She provided them with education about Hepatitis C, transmission, risk, and treatment. Residents who agreed to be were screened for Hepatitis C and informed that they would be tested again in six months (though, it's not clear whether this follow-up testing ever happened).

On July 1, 2015, Rhines met individually with each of the residents again to review their test results. Each resident received a copy of his results and had an

opportunity to ask questions. None of the residents who were tested received a positive test result. WRC no longer uses shared unit razors.

## II. DISCUSSION

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the parties' motions, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official is liable for failing to protect an inmate from harm if (1) "the harm to which the prisoner was exposed [was] . . . an objectively serious one" and (2) "the official . . . ha[d] actual . . . knowledge of the risk," i.e., "he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citing and quoting *Farmer*, 511 U.S. at 834, 837).

Plaintiffs' claims, however, present "a unique situation" because they have not shown that any of them actually contracted Hepatitis C from sharing an electric razor with DuBose or face a continuing risk of contracting it from a shared razor. *See Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). In other words, "[t]he danger to which [they]

allegedly [were] exposed . . . never materialized." *Id.* A prisoner cannot maintain an Eighth Amendment claim "for money damages based solely on prison officials' past failure to take measures to protect the prisoner . . . . at least where . . . exposure to risk of harm cannot be said to result from an official's malicious or sadistic intent." *Id.*

Plaintiffs argue, "Defendants have put forth no admissible evidence plaintiffs did not actually contract the virus." Pls.' Reply Br., Docket No. 125, at 2. However, plaintiffs misunderstand the burden of proof. Ultimately, it is their responsibility to demonstrate that they are entitled to relief from defendants because they suffered a cognizable harm for which defendants are liable. Plaintiffs have failed to show that they suffered any physical harm due to defendants' failure to protect them from exposure to Hepatitis C.

A prisoner can maintain an Eighth Amendment claim, even in the absence of physical injury, based on prison officials' malicious or sadistic exposure of the prisoner to risk of harm because the Eighth Amendment prohibits "the wanton infliction of psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 16 (1992); *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001); *Babcock*, 102 F.3d at 273); *see also Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). "[T]he Constitution does not countenance psychological torture merely because it fails to inflict physical injury." *Babcock*, 102 F.3d at 273. An Eighth Amendment claim on this basis, though, requires a prisoner to show that prison officials acted "'for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 321 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Plaintiffs do not argue that defendants maliciously or sadistically exposed them to a risk of contracting Hepatitis C, and nothing in the record would permit a reasonable jury to conclude that they did.

5

Having failed to show either that they suffered any physical harm or that defendants acted out of malice, plaintiffs have failed to show that a reasonable jury could find in their favor on their Eighth Amendment claims. *See Whiteside v. Pollard*, 481 F. App'x 270, 271 (7th Cir. 2012). Thus, defendants are entitled to judgment as a matter of law, and I will grant their motion for summary judgment.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiffs' motion to supplement their summary judgment motion with missing exhibits (Docket No. 102) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket No. 105) is **GRANTED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment (Docket No. 96) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from the judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than **one year** after the entry of the judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

I expect the parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 3rd day of April, 2017.


s/ Lynn Adelman
LYNN ADELMAN
District Judge